UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| KATIE A. CARLSON,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MEDICREDIT, INC.,<br><br>　　　　Defendant. | Case No.: 5:22-cv-00397-XR<br><br>Honorable Judge Xavier Rodriguez |

**PLAINTIFF'S RESPONSE MEMORANDUM IN
OPPOSITION TO DEFENDANT MEDICREDIT, INC.'S MOTION TO DISMISS**

　　　NOW comes KATIE A. CARLSON ("Plaintiff"), by and through the undersigned, responding to MEDICREDIT, INC.'s ("Defendant") Motion to Dismiss ("Defendant's Motion"), and in support thereof, states as follows

**I.　INTRODUCTION**

　　　Defendant's Motion, brought pursuant to Fed. R. Civ. P. 12(b)(1), seeks dismissal of Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA") for lack of Article III standing. Defendant asserts that, because Plaintiff has failed to show any concrete injury flowing from Defendant's conduct, she lacks standing to pursue her claims.

　　　As an initial matter, Plaintiff hereby abandons her FDCPA claims brought pursuant to §§ 1692e *et seq.* and 1692f. As such, remaining for consideration are Plaintiff's claims brought under 15 U.S.C. §§ 1692d and d(5), and the corresponding provisions of Regulation F, 12 C.F.R. § 1006.14 *et seq.*

　　　In arguing that Plaintiff has failed to establish Article III standing for purposes of pursuing her remaining claims, Defendant has overlooked the persuasive dicta outlined in the recent Fifth

1

Circuit case discussing Article III standing in the context of the FDCPA – *Perez v. McCreary, Veselka, Bragg & Allen, P.C.,* 2022 U.S. App. LEXIS 22649 (5th Cir. Aug. 15, 2022). As suggested by the Fifth Circuit in *Perez,* the harms protected by §§ 1692d and d(5) bear a close relationship to the historical harm protected by the tort of intrusion upon seclusion. Therefore, because the harm protected by the FDCPA provisions at issue bear a close relationship to harms protected traditionally at common law, Plaintiff need not adduce any additional harm beyond the statutory violations themselves in order to establish a sufficiently concrete, if albeit intangible, injury for Article III standing purposes.

Therefore, Defendant's Motion should be denied to the extent it seeks dismissal of Plaintiff's remaining claims.

## II.    LEGAL ARGUMENT

### A.  Plaintiff Has Article III Standing To Pursue Her Remaining Claims

Defendant's factual attack on Plaintiff's Article III standing takes great effort to outline the limited facts of this case that have been discovered through the limited discovery engaged in to-date, and offers a number of arguments as to why certain alleged damages are not factually supported or otherwise fail to establish Plaintiff's Article III standing. However, in so doing, Defendant has completely overlooked the invasion of privacy brought about by its phone call campaign and how, given the FDCPA provisions at issue, such invasion of privacy is sufficient to establish Plaintiff's Article III standing.

In *Perez,* the Fifth Circuit had the occasion to analyze the Supreme Court's opinion in *TransUnion LLC v. Ramirez,* 141 S.Ct. 2190 (2021), and came to the following summation:

> So *TransUnion* is clear: A plaintiff always needs a concrete injury to bring suit, and injuries are concrete only if they bear "a close relationship" to injuries that courts have traditionally recognized as concrete. But how close is close enough? The Supreme Court hasn't

2

> provided an exact formulation. But then-Judge Barret got it right in *Gadelhak v. AT&T Services Inc.,* 950 F.3d 458, 462 (7th Cir. 2020): "[W]e are meant to look for a 'close relationship' in kind, not degree." After all. Congress's ability to "elevate" harms "to the status of legally cognizable injuries," *TransUnion,* 141 S.Ct. at 2205 (quotation omitted), implies that the level of harm required at common law "does not stake out the limits of [its]power to identify harms deserving a remedy." *Gadelhak,* 950 F.3d at 463.
>
> Picking up on that cue, our court has already recognized that we must "focus[] on types of harms protected at common law, not the precise point at which those harms become actionable." *Cranor v. 5 Star Nutrition, L.L.C.,* 998 F.3d 686, 693 (5th Cir. 2021) (quotation omitted). Beyond the Seventh Circuit, many of our sister circuits have done the same. So a plaintiff doesn't need to demonstrate that the level of harm he has suffered would be actionable under a similar, common-law cause of action. **But he does need to show that the type of harm he's suffered in similar in kind to a type of harm that the common law has recognized as actionable.** If he can't do that, he hasn't suffered a concrete injury and doesn't have standing to bring suit.

*Perez,* 2022 U.S. App. LEXIS 22649 at *6-8 (emphasis added). Thus, as clarified by the Fifth Circuit in *Perez,* if a consumer can show that the type of harm he's suffered is similar in kind, but not degree, to a harm recognized as actionable under the common law, such injuries are sufficiently concrete for standing purposes.

In *Perez,* the communication at issue was a single collection letter received by a consumer which was alleged to be unwanted, prompting the plaintiff to argue that the single unwanted communication constituted an invasion of privacy, in turn illustrating that there was standing to pursue the claims. *Id.* at *14. The court provided a thoughtful analysis of the argument, notwithstanding its disagreement therewith:

> A person commits the tort of intrusion upon seclusion by "intentionally intrud[ing], physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." Restatement (Second) § 652B. One pattern of liability is for repeated, harassing communications. *See id.* cmt. d; *Gadelhak,* 950

3

> F.3d at 462.
>
> *TransUnion* explicitly recognized that harms analogous to this tort can qualify as concrete. *See* 141 S.Ct. at 2204 (citing *Gadelhak,* 950 F.3d at 462). Before and after *TransUnion,* many of our sister circuits also held that unwanted communications could cause concrete injuries similar to intrusion upon seclusion or other privacy torts. Since the harms elevated by Congress need only be similar "in kind, not degree," *Gadelhak,* 950 F.3d at 462, it seems to follow that a single unwanted communication could qualify as a concrete injury even though intrusion upon seclusion requires many. So how can we say that Perez's receipt of the letter did not inflict a concrete injury?

*Id.* at *14-15. The *Perez* court's rationale in rejecting the intrusion-upon-seclusion-as-concrete-injury rationale was twofold. First, the court noted how the FDCPA claim at issue in *Perez* was § 1692e, and that Congress did not intend to regulate consumer privacy when prohibiting false and deceptive representations by debt collectors. *Id.* at *15-16. Therefore, absent a connection between the asserted traditional harm and the statutory provision at issue, there was no standing. The court, however, went on to discuss the FDCPA provisions that do implicate consumer privacy: "Congress also expressed concern about 'invasions of individual privacy' . . . [b]ut it addressed those problems through a different section of the FDCPA: the statute's prohibition on harassment and abuse." *Id.* at *16 (citing 15 U.S.C. § 1692d).

Therefore, the Fifth Circuit has plainly recognized that claims under §§ 1692d and d(5) implicate harms that bear a close relationship to the harms traditionally protected at common law through intrusion upon seclusion theories. Thus, the Fifth Circuit would seemingly conclude, if actually presented with the issue, that harassing phone calls alleged to be in violation of the FDCPA's harassment provisions give rise to intangible, but nevertheless concrete, injuries for purpose of Article III standing given the close relationship between the privacy interests protected by the FDCPA provisions and those traditionally protected by invasion of privacy and intrusion upon seclusion theories. Applying this logic to the instant matter, the Court should conclude that

4

Plaintiff's allegations regarding invasion of privacy, a harm that Defendant has not meaningfully addressed in its motion, are sufficient to establish her Article III standing to pursue her remaining claims.

However, the *Perez* court further found the absence of standing premised upon the intrusion upon seclusion theory because, the most analogous FDCPA claim to receiving an unwanted letter was § 1692d(5), which indicates harassment must be repeated, and that because the plaintiff in *Perez* only received a *single* communication from Defendant, there was no standing since congress did not elevate the receipt of a *single* communication to legally cognizable status through §§ 1692d(5) and 1692d's, given the indications harassment needed to be repeated or otherwise be formed from more than a single communication. *Id.* at *16.

Unlike the communication set forth in *Perez,* the instant matter does not involve a single communication. Plaintiff's allegations and the record reflects that Plaintiff had been getting calls from Respondent from over a year preceding the filing of this case. *See* Defendant's Exhibit 1. Although Defendant's Motion takes great effort to limit the nature of Plaintiff's claims and undercut harassing nature of its conduct, it remains the case that Plaintiff did not merely receive a single communication from Defendant, but instead received many over a lengthy period of time.

Therefore, the court should find the *Perez* opinion persuasive and conclude that, because there exists a close relationship between the harms implicated by Plaintiff's remaining FDCPA claims and the harms traditionally protected by the tort of intrusion upon seclusion, the FDCPA violations themselves give rise to concrete injuries, and Plaintiff thus has Article III standing to pursue her claims. *See also, Lupia v. Medicredit, Inc.,* 8 F.4th 1184, 1191 (10th Cir. 2021) ("Though a single phone call may not intrude to the degree required at common law, that phone call poses the same *kind* of harm recognized at common law – an unwanted intrusion into a plaintiff's peace

and quiet."); *Ward v. Nat'l Patient Account Servs. Sols.,* 9 F.4th 357, 368-69 (6th Cir. 2021) (J. Karen Nelson Moore, dissenting)[1]; *Moldasheva v. Hunter Warfield,* 2021 U.S. Dist. LEXIS 139210, at *8-9 (C.D. Cal. Mar. 29, 2021) (finding standing for alleged violations of § 1692c(a)(1) and 1692d(5), based solely on the alleged violations, because "Defendant's excessive phone call, including after she allegedly requested that they stop, infringed on her right to privacy"); *Chapman v. Nat'l Health Plans & Benefits Agency, LLC,* 2022 U.S. Dist. LEXIS 138916 (E.D. Mich. Aug. 4, 2022).

### III. CONCLUSION

In light of the foregoing, the Court should partially grant Defendant's Motion as to Plaintiff's abandoned claims, but deny Defendant's Motion to the extent it asserts Plaintiff lacks standing to assert her claims for violations of §§ 1692d and d(5). The harm these provisions were designed to protect – i.e., invasion of privacy – bears a close relationship to the *kind* of harm recognized traditionally at common law under the tort of intrusion upon seclusion. Given the close relationship between such harms, the procedural harm is itself is a concrete injury of the sort traditionally recognized, and therefore establishes Plaintiff Article III standing to pursue her remaining claims.

Dated: September 21, 2022                Respectfully submitted,

                                         *s/ Nathan C. Volheim*
                                         Nathan C. Volheim
                                         Admitted in the Western District of Texas
                                         Sulaiman Law Group, Ltd.
                                         2500 South Highland Avenue, Suite 200
                                         Lombard, Illinois 60148

---

[1] The dissenting opinion in *Ward* addressed a standing issue that the majority sought to avoid given the pleadings in the case. As such, even though this was a dissenting opinion, it provides further persuasive authority for purposes of determining the post-*TransUnion* analysis applicable to this case, with the only disagreement being whether and to what extent the Court should address the argument.

                                          Phone: (630) 575-8181
                                          Fax: (630) 575-8188
                                          nvolheim@sulaimanlaw.com

## **CERTIFICATE OF SERVICE**

The undersigned, one of the attorneys for Plaintiff, certifies that on September 21, 2022, he caused a copy of the foregoing, **PLAINTIFF'S RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS,** to be served electronically via CM/ECF system on: all counsel of record.

                                         s/Nathan C. Volheim
                                         Counsel for Plaintiff